```
                                                            FILED
                                                     U.S. DISTRICT COURT
              IN THE UNITED STATES DISTRICT COURT      AUGUSTA DIV.

             FOR THE SOUTHERN DISTRICT OF GEORGIA  2006 JAN 20 AM 9: 51

                           DUBLIN DIVISION         CLERK_____
                                                      SO. DIST. OF GA.
```

DAVID E. BAGGETT,                )
                                 )
    Plaintiff,                   )
                                 )
v.                               )    CV 305-007
                                 )
JO ANNE B. BARNHART,             )
Commissioner of Social Security, )
                                 )
    Defendant.                   )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

David E. Baggett ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

# I. **BACKGROUND**

Based upon claims of disability dating back to September 29, 1996, Plaintiff applied for DIB and for SSI based on a protective filing date of November 27, 2001. Tr. ("R."), pp. 14, 82, 267-68. The Social Security Administration denied both his original claims, R. 59-62, and his request for reconsideration. R. 65-67. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 68. Represented by counsel, Plaintiff appeared and testified at a hearing on April 2, 2003. R. 25-54. Plaintiff's sister, Deborah Scarborough, and a Vocational Expert ("VE"), Mark Leaptrot, also testified at the hearing. R. 43-50. The ALJ then issued an unfavorable decision dated April 11, 2003. R. 11-21.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's degenerative joint disease of the hips is a severe impairment, based upon the requirements in the Regulations (20 CFR §§ 404.1521 and 416.921).

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965). However, he retains the residual functional capacity to perform work at the sedentary exertional level.[1]

---

[1]Sedentary work involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and

2

>   Specifically, the claimant is able to lift/carry 20 pounds occasionally and 10 pounds frequently; and stand/walk 2 hours in an 8-hour workday, with a sit/stand option.
>
> 5.  Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a garment inspector, box sealer inspector, and appointment clerk. Therefore, the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

R. 20.

When the Appeals Council ("AC") denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 5-7. Having failed to convince the AC to review his case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff now argues, *inter alia*, that the ALJ failed to give proper weight to the opinion of a treating physician concerning the use of a cane, leading to an incorrect conclusion that Plaintiff did not meet the requirements of Listing 1.02A, that the ALJ failed to consider the side effects of Plaintiff's medications, and that the ALJ's credibility analysis was improper.

---

>   standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a).

3

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary

4

evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A.     Failure to Consider Side Effects of Plaintiff's Medications.**

Of Plaintiff's stated grounds for relief, the Court bases its recommendation for remand on the conclusion that the ALJ failed to consider adequately the side effects of Plaintiff's medications,[2] side effects reported as dizziness, drowsiness, and lightheadedness. R. 103, 124.[3]

---

[2]The fact that Plaintiff was taking medication for his pain is not in dispute. The record reveals that one of Plaintiff's reported medications is Etodolac (R. 103), a nonsteroidal anti-inflammatory drug (NSAID) that is a generic form of Lodine. http://www.medicinenet.com/etodolac-oral/article.htm (last visited Jan. 11, 2006). Reported side effects include: upset stomach, diarrhea, gas, nausea, constipation, fatigue, or dizziness. Id. The combination of Propoxyphene and Acetaminophen Plaintiff reported taking (R. 124) is a generic combination for Darvocet that has reported possible side effects of lightheadedness, dizziness, sedation, nausea, vomiting, drowsiness, constipation, and spasm of the ureter, which can lead to difficulty in urinating. http://www.medicinenet.com/propoxyphene_and_acetaminophen/article.htm (last visited Jan. 11, 2006).

[3]The Court located these reports of side effects despite the Commissioner's position that Plaintiff did not disclose to the Social Security Administration "significant medication

5

An ALJ fails in his duty to develop fully the record when he does not make findings about the effect of prescribed medication on a claimant's ability to work.[4] Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981); see also Lacy v. Barnhart, 309 F. Supp.2d 1345, 1352 (N.D. Ala. 2004) (reversing denial of benefits where, *inter alia*, ALJ "failed to

---

side-effects. (See Tr. 111-113, 117-118)." (Doc. no. 15, p. 7 n.4). Not only did the Commissioner neglect to point out the written reports of side effects noted above, but she also failed to acknowledge that, at least as to the Propoxyphene, Plaintiff reported the side effect of drowsiness directly to the ALJ at the hearing. R. 32-33. Whether these side effects are "significant" cannot be determined from the current state of the record because, as discussed herein, the issue was not properly developed by the ALJ.

[4] Plaintiff characterizes the ALJ's treatment (or non-treatment) of medicinal side effects as an issue of credibility. (Doc. no. 10, pp. 16-17; doc. no. 16, p. 7). However, as described herein, the failure to analyze fully the possible side effects of medication is a failure to develop properly the record. Once the record is fully developed on the issue of medicinal side effects, the ALJ will have the opportunity to make a credibility determination concerning the severity of any side effects and the impact those effects may have on Plaintiff's ability to work. To date, the ALJ has specifically credited the testimony of Plaintiff and his sister concerning Plaintiff's reduction in functioning. R. 18. However, the ALJ concluded that the credible testimony did not evidence a reduction in functioning to the point that Plaintiff could not perform sedentary work. It remains to be seen whether the issue of medicinal side effects will change that conclusion. This Court declines the invitations of both Plaintiff and the Commissioner to leapfrog the administrative fact-finding function and make a conclusive determination at this point, prior to full development of the record.

Of course, on remand, any credibility determinations about the extent of such an impact of medicinal side effects on the ability to work must comport with the legal standards applicable in this Circuit. Under the Eleventh Circuit's pain standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). When discrediting a claimant's subjective allegations of disabling pain, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*). That is, "[t]he credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

6

consider the effects of the side effects of plaintiff's medication"). As the Eleventh Circuit has explained, "It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." Cowart, 662 F.2d at 737. The court in Cowart went to on to quote with approval the following language from a First Circuit case:

> The present record contains no medical evidence regarding whether appellant's medication was in "unusually large doses" or whether its side effects might conceivably be disabling. While appellant's claim might be exaggerated, a layman is in no position to make any such determination on this record. It would have been appropriate for the administrative law judge to have sought further medical evidence, or to have made some further inquiry, since appellant raised the question. At [the] very least, the administrative law judge should have made a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored.

Id.[5] (internal citations omitted).

Here, Plaintiff identified side effects of his medicine in writing. R. 103, 124. In addition, at the hearing before the ALJ, Plaintiff testified about taking Propoxyphene and its side effects on him, including drowsiness and dry mouth. R. 32-33. The ALJ also questioned the VE about whether a claimant could maintain the attention and concentration necessary to perform the jobs identified as available in this case if side effects of medication

---

[5]The Court recognizes that the ALJ in Cowart had a "special duty" to develop the record because the claimant, unlike Plaintiff, was not represented by counsel at her administrative hearing. 662 F.2d at 735. However, the court in Cowart also specifically stated that an ALJ has a basic obligation to develop a full and fair record, even if the claimant is represented by counsel. Id.; see also Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996) (*per curiam*) (stating that ALJ is "duty-bound to develop a full and fair record"). Given that Plaintiff made written notation of side effects and testified to the existence of some side effects at the hearing, and as the ALJ himself questioned the VE about the impact of medicinal side effects on the ability of a claimant to do the jobs identified as available for Plaintiff, the Court comfortably concludes that the duty to address reported side effects from Plaintiff's medicine fell within the ALJ's basic obligation to develop a full and fair record.

7

were a factor under consideration. R. 47-48. Despite all of these alerts to the possible impact of medicinal side effects, the ALJ's written decision failed to make any mention of them.

The ALJ noted in his opinion that subsequent to a September 1996 car accident, Plaintiff had been prescribed Naprosyn EC to help alleviate pain.[6] R. 16. The ALJ also noted that doctors at the Veterans' Administration Medical Center ("VAMC") in Dublin, Georgia prescribed Lodine for pain, but doctors then changed Plaintiff's prescription to Propoxyphene in April of 2002. R. 16. That is all the ALJ had to say about Plaintiff's medication. In fact, in recounting Plaintiff's hearing testimony, the ALJ wholly omitted any mention of Propoxyphene or Plaintiff's reported drowsiness from taking the medicine. R. 17. Moreover, although the ALJ questioned the VE about the impact of medicinal side effects on the ability to maintain attention and concentration necessary for the jobs identified as available to Plaintiff, the ALJ made no mention of any such possible vocational restriction in his written opinion. Nor did the ALJ make any attempt to address the VE's conclusion that the jobs he had previously cited - and which were relied upon by the ALJ in his written opinion - would not be available if Plaintiff's attention and concentration were substantially compromised. R. 47-48.

The Commissioner does not confront Plaintiff's argument head on, choosing instead to argue that because Plaintiff presented no medical documentation corroborating his claims of suffering from medicinal side effects, and because his medication was effectively relieving

---

[6]Naprosyn is also a NSAID used to alleviate pain with possible side effects of upset stomach, nausea, vomiting, heartburn, headache, diarrhea, constipation, drowsiness, and dizziness. http://www.medicinenet.com/naproxen_enteric_coated_tablet-oral/article.htm (last visited Jan. 11, 2006).

his pain by August of 2002, "the ALJ did not err in failing to credit Plaintiff's allegations on this issue." (Doc. no. 15, p. 7). Putting aside for a moment the issue of "crediting" Plaintiff's testimony about side effects, at a more basic level, the ALJ did not acknowledge the possibility of, let alone analyze the impact of, medicinal side effects. The Commissioner's attempt to gloss over the ALJ's failure to develop fully and analyze this issue must fail.

Whether Plaintiff's allegations of side effects can or cannot be corroborated is not an issue for this Court to decide. Stated otherwise, this Court cannot now engage in an administrative review that was not done in the first instance by the Commissioner. Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). Moreover, as the record has not been fully developed on this issue, any conclusions drawn on this incomplete record would be premature. The law requires the Commissioner to provide a well-reasoned, well-articulated decision. Without such an analysis, the federal courts are unable to provide claimants with sound, meaningful review of the administrative decision. The Court cannot second-guess what the ALJ may have been thinking or may have intended to consider. In this instance the ALJ's decision does not adequately consider the medicinal side effects reported by Plaintiff. Therefore, this case should be remanded for further proceedings.

**B.     Remaining Contentions.**

Because the Court is recommending a remand for full development of the record concerning the side effects of Plaintiff's medication, the Court need not address Plaintiff's remaining contentions in detail. Of course, on remand Plaintiff's claims must be evaluated

in compliance with the applicable regulations and case law. However, the Court is compelled to comment on one other point in Plaintiff's briefing. According to Plaintiff, the ALJ erred in finding that Plaintiff's cane is not necessary for ambulation. (Doc. no. 10, pp. 14-16). Plaintiff maintains that the ALJ failed to consider properly the advisement to Plaintiff from Dr. Arepally Rao, Chief of Physical Medicine and Rehabilitation Service at the VAMC, to use a straight cane on the left hand side. R. 235. Under Plaintiff's theory, because the ALJ found that there is no medical evidence indicating that a cane is necessary for ambulation despite this one sentence notation from Dr. Rao, the ALJ should have re-contacted Dr. Rao for further clarification. The Court disagrees.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, assuming *arguendo* that Dr. Rao's consultation at the request of Dr. Moti, another doctor at the VAMC, qualifies Dr. Rao as a treating physician, the one-sentence admonition from Dr. Rao on April 23, 2002 does not establish that Plaintiff could not ambulate without the cane, let alone that he needed the cane for ambulation for the requisite twelve-month period.[7] Additionally, contrary to Plaintiff's position, the ALJ was not required to re-contact Dr. Rao for clarification or to properly discount the applicability of the advisement to use a cane. Plaintiff has not shown that an ALJ must re-contact a physician when the ALJ does not credit the physician's findings. Notably, under the regulations cited by Plaintiff, additional information need only be sought "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled . . ." 20 C.F.R. §§ 404.1512(e) and 416.912(e). Here, there was other information in the record upon which the ALJ could base his decision.

Moreover, although Plaintiff cites SSR 96-2p in support of his argument for requiring the ALJ to seek more information to support Dr. Rao's advisement to use a cane (doc. no. 10, p. 15), he stopped his citation short of this crucial language: "Ordinarily, [additional] development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed." SSR 96-2p. In this case, the ALJ noted that during an April 29, 2002 consultative examination performed by Dr. Gerardo Guzman, Plaintiff was able to walk

---

[7]"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

without a cane, albeit with a limp to the right lower extremity. R. 16, 17, 184. Moreover, Plaintiff testified at the administrative hearing that although it would cause him pain, he could walk without a cane.[8] R. 17, 40. The ALJ also acknowledged that Plaintiff had been prescribed medicine (although he did not acknowledge, as described above, the side effects of that medicine) that, by October of 2002, had effectively reduced Plaintiff's pain level from 7 or 8 to about 2. R. 16, 222. Moreover, the VAMC medical records, of which Dr. Rao's notes are a part, end as of October 2002. R. 221. Thus, the documentation for Plaintiff's use of a cane for ambulation runs only from April 23, 2002 to October 22, 2002 - well short of the requisite twelve-month period to establish disability.[9]

---

[8] Notably, the advisement from Dr. Rao to use a cane does not provide any detail suggesting that ambulation without a cane, for any particular distance or for the occasional standing required in a sedentary job, would be impossible. R. 235.

[9] On Plaintiff's first recorded visit to the VAMC on November 21, 2001, Plaintiff's mobility was noted to be independent without an assistive device. R. 252. On April 3, 2002, Plaintiff's mobility was again noted to be independent without an assistive device. R. 244. Dr. Rao's examination occurred on April 23, 2002. R. 235, 237. On July 10, 2002, the mobility notation changed to use of an assistive device (cane). R. 234. The mobility notation remained as ambulatory with a cane on August 2, 2002 and October 22, 2002. R. 224, 227. Interestingly, the VAMC records indicate that even as of October 22, 2002, when Plaintiff was noted as being ambulatory with a cane, it was also noted that he left his appointment alone. R. 222. This perhaps suggests, contrary to Plaintiff's current argument (doc. no. 10, p. 18), that even if he cannot drive a car, he can "travel without companion assistance" (see Listing 1.00B(2)(b), App. 1, Subpt. P, Reg. No. 4) - e.g., use of standard public transportation. In any event, on remand, the issue of meeting Listing 1.02A (including the (in)ability to ambulate effectively as defined in Listing 1.00B(2)) must be decided in accordance with appropriate legal standards. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (finding claimant must meet all of specified medical criteria; impairment manifesting only some criteria, no matter how severely, does not qualify); Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (finding that claimant bears burden of showing condition at issue meets or equals the Listing). In addition, the applicable regulations provide that to meet or equal an impairment listed in Appendix 1, the impairment must meet the duration requirement. 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Finally, as the Honorable Dudley H. Bowen, Jr., United States District Court Judge, recently explained in another case in which one of Plaintiff's counsel represented the claimant, a 1999 case decided in this District and cited currently by Plaintiff does not hold that a contrary medical opinion must exist before an ALJ can reject a treating physician's opinion. See Knight v. Barnhart, CV 304-058 (S.D.Ga. Sept. 26, 2005), doc. no. 21, pp. 3-5 (discussing Jones v. Apfel, Civil Action No. 499-220 (S.D. Ga. Oct. 25, 2001), and determining that Jones does not require automatic acceptance of the opinion of a treating physician without contradictory medication documentation). Rather, as recited herein, a treating physician's opinion may be discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis, 125 F.3d at 1440. As discussed above, the ALJ had other evidence in the record to discount Dr. Rao's advisement to use a cane. Thus, the ALJ was not required to re-contact Dr. Rao for further development of his opinion.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this ___ day of January, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE